```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                     GALVESTON DIVISION

CHERIE L. BEST                    §
                                  §
        Plaintiff,                §
                                  §
v.                                §     CIVIL ACTION NO. G:06-0300
                                  §
UTI INTEGRATED LOGISTICS,         §
                                  §
        Defendant.                §
```

MEMORANDUM AND ORDER

Pending is Defendant UTI Integrated Logistics's Motion for Summary Judgment (Document No. 22). Plaintiff Cherie L. Best has filed no response, and the motion is therefore deemed unopposed pursuant to Local Rule 7.4. After carefully considering the motion and the applicable law, the Court concludes as follows.

I.  Background

This is an employment discrimination case. Plaintiff Cherie L. Best ("Plaintiff"), a 53-year-old Caucasian female, served as a Quality Assurance Associate for Defendant UTI Integrated Logistics ("Defendant") from February to June, 2005. Earlier that year, Defendant, a warehouse servicing company, entered into a contract to manage warehoused goods for Wal-Mart in a newly-constructed import distribution center ("IDC") comprised of two warehouses, each with 2 million square feet of space. Document No. 22 ex. A ¶¶ 4-5, ex. D ¶ 4. During its initial push to fill nearly 1,000

positions for the IDC operation, Defendant hired Plaintiff to serve as a "Quality Assurance Associate" at the IDC. Id. ex. A ¶ 5, ex. D ¶ 3. Quality Assurance Associates were primarily responsible for maintaining the accuracy of inventory at IDC. According to Donald Duggins ("Duggins"), Defendant's Operations Manager, Defendant expected all Quality Assurance Associates be able to lift up to 70 pounds, climb, stand, reach, and bend with inventory in hand, and walk long distances in order to perform tasks such as counting, auditing, and relocating inventory in the 4-million square feet of warehouse space. Id. ex. D ¶ 4. When Plaintiff interviewed with Duggins, she allegedly represented that her previous employment had required her to "'run' from 'place to place' . . . to 'check materials.'" Duggins further asserts that Plaintiff told him that she could lift 70 pounds. Id. ex. D ¶ 5. Plaintiff was also required to take a drug test and 40-pound lifting test before being hired, both of which she passed. Id.

On March 12, Duggins sent Plaintiff to Georgia to train for a position as report clerk, a post within the Quality Assurance Group that required use of Microsoft Excel, a spreadsheet program, to create formulas for tracking inventory and to generate reports used to schedule tasks and organize the movement of inventory. Id. ex. D ¶ 6, ex. G at 134:25-135:2. Six days later, after observing Plaintiff's struggles with the demands of the job, Duggins pulled her out of training, allegedly telling Plaintiff she was "stupid"

and wondering aloud why he had hired her.  Id. ex. D ¶ 7, ex. G at 113:5-12, 135:14-22.  According to Plaintiff, Duggins chose to fill the report clerk position with a "lesser qualified, young, black female."  Id. ex. G at 135:14-136:13 (internal quotations marks omitted).

On March 19, Plaintiff was sent to work on the floor of the IDC.  During the course of her employment, Duggins allegedly approached a group of employees, including Plaintiff, who were gathered together in the warehouse.  Upon seeing a few of the employees seated on the floor, Duggins purportedly "started yelling" and saying "something about white people being lazy . . . ."  Id. ex. G at 108:23-109:13.  On another occasion, Plaintiff claims that an unnamed supervisor commented to her "that they were going to get rid of all the old people because they couldn't train them."  Id.  ex. G at 105:10-23.

After working for several weeks without issue, Plaintiff complained to Duggins that she was suffering back pain, could not continue working on the floor of the warehouse, and wished to be placed in a different position with shorter, 8-hour shifts.  Id. ex. D ¶ 9.  At the time, Quality Assurance Associates were required to work 12-hours a day.  On June 20, Plaintiff provided Duggins with documentation regarding her back problems.  Id. ex. D ¶ 10. The physician's report showed that, until June 20, 2006, Plaintiff was medically restricted from walking, standing, sitting, pushing,

or pulling for more than 4 hours a day; was entirely forbidden from kneeling, squatting, bending, stopping, twisting, or climbing stairs or ladders; and could not work more than 8 hours a day.  Id. ex. D ¶ 10, ex. J.  Plaintiff's medical record also reflected a history of back problems predating her employment with Defendant which she had not disclosed during the interview process.  Duggins, together with Stephen W. Collier, Defendant's Director of Human Resources, and Jenny Barbee, another Human Resources employee, concluded that Plaintiff could not perform any of the other jobs in the IDC regardless of the length of the shift.  Id.  ex. A ¶¶ 8-9, ex. D ¶ 11.  According to Duggins and Collier, the few positions that did not impose the same physical demands were filled, and Plaintiff would not have qualified for any of these posts even if one had been available.  Id.  ex. A ¶ 9, ex. D ¶ 11.  A few days later, Duggins, Collier, and Barbee met with Plaintiff.  Id.  ex. A ¶ 10, ex. D ¶ 12.  The three explained to Plaintiff that her medical restrictions prevented Defendant from returning her to work as a Quality Assurance Associate, and that Defendant had no other openings for which Plaintiff was qualified that did not also conflict with her restrictions.  Plaintiff was terminated effective June 29, 2005.  Id.

     Plaintiff claims in this suit that Defendant wrongfully discriminated against her on the basis of disability, age, and race, in violation of the Americans With Disabilities Act ("ADA"),

the Age Discrimination in Employment Act ("ADEA"), and Title VII, respectively.  Defendant now moves for summary judgment, contending, among other things: (1) Plaintiff's removal from training for the report clerk position was not based on her age or race; and (2) Plaintiff cannot show that she was a "qualified individual" under the ADA.  Document No. 22 at 9, 18-19.

## II.  Standard of Review

A.  Summary Judgment Standard

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth

specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

### III. Discussion

#### A. Title VII and the ADEA

Title VII and the ADEA proscribe an employer from terminating or otherwise discriminating against any individual because of that individual's race or age, respectively. 42 U.S.C. § 2000e-2(a)(1);

29 U.S.C. § 623(a)(1).  When, as here, the plaintiff neither contends nor presents direct evidence of discrimination on the basis of age or race, her claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). *See* Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005)(ADEA); Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-317 (5th Cir. 2004) (Title VII).  Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case of discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000); St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2746-47 (1993).  Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  Reeves, 120 S. Ct. at 2106; St. Mary's Honor Ctr., 113 S. Ct. at 2747.  The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'"  Reeves, 120 S. Ct. at 2106 (quoting St. Mary's Honor Ctr., 113 S. Ct. at 2748).

If the employer sustains its burden, "the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination."  Machinchick, 398 F.3d at 350; *see also* St. Mary's, 113 S. Ct. at 2749. The plaintiff may meet this burden by producing evidence tending to

show (1) that the reason offered by the employer is not true, but is instead a pretext for discrimination, or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's race or age. *See* Rachid v. Jack In the Box, Inc., 376 F.3d 305, 312 (2004) (announcing a modified McDonnell Douglas framework applicable to Title VII and ADEA claims following Desert Palace, Inc. v. Costa, 123 S. Ct. 2148 (2003)).  Here, Plaintiff does not argue, and the pleadings do not support, a mixed motive theory of discrimination. As such, Plaintiffs' claims will be considered under the more traditional pretext analysis.  *See* Johnson v. Saks Fifth Ave., TX, LP, 2007 WL 781946, at *21 (S.D. Tex. Mar. 9, 2007) (Rosenthal, J.); *see also* Ward v. Midwestern State Univ., 217 Fed. Appx. 325, 329 & n.20 (5th Cir. 2007)(unpublished opinion).

Plaintiff's Title VII and ADEA claims appear to arise from her alleged "demot[ion]" from the position of report clerk on March 18, 2007, for which Defendant sent her to train on March 12, and her replacement with a "lesser qualified, young, black female." Document No. 1 ¶ 6; Document No. 22 ex. G at 135:14-136:13. Defendant contends that, even assuming Plaintiff could establish a *prima facie* case for discrimination on the basis of age or race with respect to the discontinuation of her training to serve as a report clerk, Plaintiff has not produced any evidence rebutting Defendant's explanation that Plaintiff's poor work performance

motivated its decision. Duggins testifies that within the first two days of Plaintiff's intended two-week training period in Georgia, he realized that she "was neither qualified nor capable of performing the duties of report clerk"--a position that required proficiency in Microsoft Excel to generate reports used to schedule tasks and organize inventory throughout the warehouse. Document No. 22 ex. D ¶ 7. Plaintiff apparently had "difficulty connecting what was happening on the warehouse floor to the reports she was supposed to generate," and, critically, her skills with Excel were "clearly lacking," as evidenced by her lack of "command of formulas she needed to utilize to track inventory and workflow." Id. Having determined Plaintiff lacked the necessary expertise for the job, Duggins decided to recall Plaintiff from Georgia and return her to a "more typically quality assurance role" that carried the same salary and benefits as those of a report clerk. Id.

Because Defendant has articulated a non-discriminatory reason for discontinuing Plaintiff's training for the position of report clerk, the burden shifts to Plaintiff to demonstrate that the proffered reason is a pretext for racial or age discrimination. *See, e.g.*, St. Mary's, 113 S. Ct. at 2749; Machinchick, 398 F.3d at 350. Plaintiff has filed no response and has failed to meet this burden. Even without a response from Plaintiff, however, the Court has considered isolated comments referenced in Plaintiff's deposition and cited in Defendant's motion, one by an unnamed

9

supervisor stating that Defendant was "going to get rid of all the old people because they couldn't train them," and another, by Duggins, allegedly disparaging "white people" as being "lazy." Document No. 22 ex. G at 105:15-23, 108:1-109:12. However, there is no evidence that these comments bore any connection to Defendant's decision to discontinue Plaintiff's training for the report clerk position. These comments are therefore insufficient to defeat summary judgment. *See* Scales v. Slater, 181 F.3d 703, 712 (5th Cir. 1999)("Stray remarks with no connection to an employment decision cannot create a fact issue regarding discriminatory intent and are insufficient to defeat summary judgment."); Price v. Marathon Cheese Corp., 119 F.3d 330, 337 (5th Cir. 1997) (noting such comments have been deemed insufficient to establish discrimination). Nor can Plaintiff's own subjective beliefs regarding Defendant's discriminatory intent raise a genuine issue of material fact on the issue of pretext. *See* Price, 119 F.3d at 337. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims under Title VII and the ADEA.[1]

---

[1] Even if the Complaint could be construed to challenge Plaintiff's termination under Title VII and the ADEA, and further assuming Plaintiff has established the remaining elements of her *prima facie* case, Defendant explains that its decision to terminate Plaintiff's employment was based on her physical inability to perform the duties required of nearly all workers at Defendant's facility, and her lack of qualifications for those few office jobs with less onerous physical requirements, even if those positions had been available. Document No. 22 ex. A ¶ 9, D ¶ 11. Because neither Plaintiff's subjective beliefs regarding Defendant's discriminatory intent, nor the stray remarks of Duggins and an

B.   "Qualified Individual" Under the ADA

The ADA "prohibits an employer from discriminating against 'an individual with a disability' who with 'reasonable accommodation' can perform a job's essential functions . . . ." U.S. Airways, Inc. v. Barnett, 122 S. Ct. 1516, 1517 (2002) (quoting 42 U.S.C. § 12112(a)).  Claims under the ADA are also analyzed under the McDonnell Douglas framework.  *See* Seaman v. CSPH, Inc., 179 F.3d 297, 300 (5th Cir. 1999) (analyzing an ADA claim under McDonnell-Douglas).  To establish a prima facie case of discrimination under the ADA, Plaintiff must show that: (1) she has a disability; (2) she was qualified for the job; and (3) an adverse employment decision was made because of her disability.  *See* Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1024 (5th Cir. 1999) (citing 42 U.S.C. § 12112(a)); *see also* Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 474 (5th Cir. 2006).

A "qualified individual" under the ADA is one who is disabled and "'with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'"  E.E.O.C. v. E.I. Du Pont de Nemours & Co., 480

---

unnamed supervisor, are sufficient to establish discrimination, *see* Price, 119 F.3d at 337, Plaintiff has not sustained her burden under Title VII and the ADEA to show that Defendant's proffered explanation is a pretext for race or age discrimination.  Summary judgment to Defendant on these claims is therefore proper.

F.3d 724, 730 (5th Cir. 2007) (emphasis omitted) (quoting Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 474 (5th Cir. 2006)); see also Cleveland v. Policy Mgmt. Sys. Corp., 119 S. Ct. 1597, 1603 (1999)) (citing 42 U.S.C. § 12111(8)). The uncontroverted summary judgment evidence shows that Plaintiff's own physician determined she was medically restricted at all times from kneeling, squatting, bending, stopping, twisting, climbing stairs or ladders; and that she was medically restricted from standing and walking for more than 4 hours a day. Document No. 22 ex. J. These limitations are entirely inconsistent with the essential requirements of the job of Quality Assurance Associate, which specifically requires that one be able to lift up to 70 pounds, climb, stand, reach, and bend with inventory in hand, and walk long distances while moving and tracking inventory in the vast 4 million square feet of warehouse space. Plaintiff, having failed to respond, offers no evidence to overcome proof of the restrictions imposed by her own doctor or to show that she was able to perform the essential duties of a Quality Assurance Associate--or, for that matter, any of the positions at the IDC, nearly all of which required similar physical strength and dexterity. The summary judgment evidence is therefore uncontroverted that Plaintiff was not able to perform the essential functions of the job, with or without reasonable accommodation, and was therefore not qualified for the job.

Plaintiff's Original Complaint alleges that she "was able to perform the essential functions of her position *with accommodation*." Document No. 1 ¶¶ 6, 12 (emphasis added). Specifically, Plaintiff asserts that Defendant had a duty to reassign her to a position with an 8-hour work day, instead of the 12-hour shifts required of Quality Assurance Associates. Id. ¶ 6. However, the medical restrictions barring Plaintiff at all times from climbing or bending and for more than 4-hour periods from walking or standing, demonstrate her inability to perform the job even if Defendant had "accommodated" her with an 8-hour shift. In other words, even with the requested 8-hour shift, the summary judgment evidence establishes that Plaintiff could not perform the essential functions of a Quality Assurance Associate. Moreover, Defendant's uncontroverted evidence also reflects that Plaintiff did not qualify for those few, less-strenuous desk jobs at the IDC, even if any had been available. Document No. 22 ex. A ¶ 9, ex. D ¶ 11.

The Fifth Circuit has also held that the ADA does not obligate employers to accommodate requests such as shift changes which, if granted, would require other employees to compensate by working longer or harder. *See* Turco v. Hoescht Celanese Corp., 101 F.3d 1090, 1094 (5th Cir. 1996) (rejecting as unreasonable a plaintiff's request to work day-time instead of rotating shifts). Here, as in Turco, Plaintiff's request for shorter shifts would require

Defendant's other employees to work harder or longer to offset her reduced hours.  The ADA does not require employers to create light-duty posts simply to accommodate disabled employees, especially when doing so would impose greater burdens on other workers.  *See* Turco, 101 F.3d at 1049.  Thus, even assuming that Plaintiff's physical limitations did not render her unable to perform her duties if she were allowed to work fewer hours (an assumption unsupported by any summary judgment evidence), Defendant was not obligated under the ADA to create a shorter shift simply to accommodate Plaintiff's request for such a shift.  In sum, Plaintiff has failed to prove an essential element of her *prima facie* case, namely, that she is a "qualified individual" under the ADA who could perform the essential functions of her job with or without reasonable accommodation.  Defendant is entitled to summary judgment on Plaintiff's ADA claim.

### IV.  Order

For the foregoing reasons, it is

ORDERED that Defendant UTI Integrated Logistics's Motion for Summary Judgment (Document No. 22) is GRANTED, and Plaintiff Cherie L. Best's claims are DISMISSED on the merits.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 3rd day of January, 2008.

*(signature)*
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE